2013-1558

---

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

FRED BASSALI,

*Plaintiff-Appellant*

v.

JOHNSON CONTROLS, INC.,
JOHNSON CONTROLS TECHNOLOGY COMPANY,
JOHNSON CONTROLS INTERIOR L.L.C.,
AND HOOVER UNIVERSAL, INC.

*Defendants-Appellees*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN IN CASE NO. 08-CV-0029, CHIEF
JUDGE PAUL L. MALONEY

---

### BRIEF FOR DEFENDANTS-APPELLEES

J. Michael Huget (P39150)
Deborah J. Swedlow (P67844)
Charles W. Duncan, Jr. (P75288)
HONIGMAN MILLER SCHWARTZ AND COHN
LLP
130 S. First St., Fourth Floor
Ann Arbor, MI 48104-1386
(734) 418-4254
mhuget@honigman.com
bswedlow@honigman.com
cduncan@honigman.com

*Attorneys for Defendants-Appellees*

November 21, 2013

# CERTIFICATE OF INTEREST

Counsel for Appellees-Defendants certifies the following:

1. The full names of every party or amicus represented by me are:

> Johnson Controls, Inc.
>
> Johnson Controls Technology Company
>
> Johnson Controls Interiors L.L.C.
>
> Hoover Universal, Inc.

2. The foregoing are the real parties in interest represented by me.

3. There is no parent corporation, or any publicly held company that owns 10% or more of the stock, of the parties represented by me.

4. The names of all law firms and the partners or associates that appeared for the Parties now represented by me in the trial court or agency or are expected to appear in this court are as follows:

*Current counsel:*

> HONIGMAN MILLER SCHWARTZ AND COHN LLP
> J. Michael Huget (partner, formerly of Butzel Long PC)
> Deborah J. Swedlow (partner, formerly of Butzel Long PC)
> Charles W. Duncan, Jr. (associate)

> *Honigman Miller Schwartz and Cohn LLP lawyers who appeared only before the trial court:*
> Jason R. Abel (partner)
> Brian D. Wassom (partner)
> Bonnie Shaw (associate; no longer with firm)

*Counsel that previously appeared but were terminated:*

BUTZEL LONG PC                      THOMPSON & KNIGHT LLP
    Christopher Brady                 Philip J. Kessler
    Orlee Goldfeld


Dated: November 21, 2013            By: /s/ J. Michael Huget
                                    J. Michael Huget (P39150)
                                    HONIGMAN MILLER SCHWARTZ AND COHN
                                    LLP
                                    130 S. First St., Fourth Floor
                                    Ann Arbor, MI 48104-1386
                                    (734) 418-4254
                                    mhuget@honigman.com

                                    *Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..............................................................................i

TABLE OF CONTENTS.................................................................................... iii

TABLE OF AUTHORITIES ...........................................................................vi

STATEMENT OF THE ISSUES.........................................................................1

STATEMENT OF THE CASE.............................................................................2

STATEMENT OF THE FACTS .........................................................................3

    I.      The Prince Universal Garage Door Opener Project.............................3

    II.    Prince's Engagement of Bassali .........................................................4

    III.   The February 1990 Meeting.................................................................5

    IV.   The Filing and Issuance of the Patents-in-Suit ....................................7

    V.    The Parties' Initial Correspondence.....................................................9

    VI.   The Present Lawsuit ...........................................................................10

SUMMARY OF THE ARGUMENT ................................................................13

ARGUMENT ....................................................................................................16

    I.      The District Court Did Not Err in Granting Summary Judgment
          for Defendants on Plaintiff's Sole Inventorship Claims ......................16

          A.    Legal Framework—Summary Judgment and Inventorship........16

          B.    Plaintiff Has Not Identified Any Evidence that Raises a
               Genuine Issue of Fact Concerning Whether He Is the Sole-
               Inventor of the Patents-in-Suit ...................................................18

    1.    The Testimony of Paul Duckworth Does Not Corroborate Plaintiff's Inventorship Claim ................19

    2.    The Testimony of the Originally-Named Inventors Does Not Corroborate Plaintiff's Inventorship Claim..................................................................22

    3.    The Block Diagram in Plaintiff's Notebook Does Not Corroborate His Inventorship Story .......................25

    4.    The Alleged "Circumstantial Evidence" Does Not Corroborate Plaintiff's Claim .........................................25

    5.    The Alleged Absence of Certain Documents Does Not Corroborate Plaintiff's Claim ...................................27

    6.    The Allegedly Falsified 'MLZ 8/18/88' Document Does Not Corroborate Plaintiff's Claim.........................29

C.    The District Court Did Not Err in Its Analysis of Plaintiff's Evidence..................................................................31

    1.    Plaintiff's Out-of-Context Quotations of the District Court Are Misleading ........................................32

    2.    The District Court Properly Considered the Testimony of Paul Duckworth.......................................33

    3.    The District Court Properly Considered the Testimony of the Named Inventors ................................34

    4.    The District Court Did Not Weigh Evidence or Draw Inferences in Defendants' Favor ............................36

    5.    "Missing Evidence" Does Not Advance Plaintiff's Case.............................................................................37

II.   The District Court Did Not Err in Granting Summary Judgment for Defendants on Plaintiff's Unjust Enrichment Claim ....................... 37

      A.   The District Court Did Not Err in Finding Plaintiff's Unjust Enrichment Claim Preempted ....................................... 38

           1.   Legal Framework—Federal Preemption ........................ 38

           2.   Plaintiff's Claim to Be the Sole Inventor of the Patents-in-Suit Does Not Save His Unjust Enrichment Claim from Preemption ............................. 40

           3.   Insofar As Plaintiff's Claim for Unjust Enrichment Arises from His Co-Inventorship Allegations, It is Preempted .................................................................. 45

      B.   The District Court Did Not Err in Finding that Plaintiff's Unjust Enrichment Claim Was Barred by the Statute of Limitations ............................................................................... 48

           1.   Legal Framework—Statute of Limitations ..................... 49

           2.   Plaintiff Has Not Shown that the District Court Committed Any Error under New York Law ................. 49

           3.   As a Matter of Policy, Unjust Enrichment Claims Arising from Patent Inventorship—to the Extent They Are Not Preempted—Cannot Continually Accrue .......................................................................... 51

           4.   Plaintiff Has Waived the Statute of Limitations Issue Through Inadequate Briefing Before the District Court ................................................................ 53

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................... 58

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

.

**Page(s)**

*Cases:*

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ..................................................................... 16

*Bonita Boats, Inc. v. Thunder Craft Boats, Inc.,*
489 U.S. 141 (1989) .............................................. 40, 41, 42, 43

*Bosch LLC v. Pylon Mfg. Corp.,*
659 F.3d 1142 (Fed. Cir. 2011) .................................................. 28

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ......................................................... 34, 36, 37

*Celsis In Vitro, Inc. v. Cellzdirect, Inc.,*
664 F.3d 922 (Fed. Cir. 2012) .................................................... 29

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys.,*
725 F.3d 1341 (Fed. Cir. 2013) ................................................ 16

*Chen v. Bouchard,*
347 F.3d 1299 (Fed. Cir. 2003) ............................................... 18

*Cipollone v. Liggett Grp., Inc.,*
505 U.S. 504 (1992) ..................................................................... 39

*Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.,*
192 A.D.2d 501 (N.Y. App. Div. 1993) ...................................... 49

*English v. Gen. Elec. Co.,*
496 U.S. 72 (1990) ................................................................ 38, 39

*Ethicon, Inc. v. U.S. Surgical Corp.,*
135 F.3d 1456 (Fed. Cir. 1998) ........................................... 17, 48

*Hartsel v. Keys*,
    87 F.3d 795 (6th Cir. 1996).................................................................. 16

*Fina Oil & Chem. Co. v. Ewen*,
    123 F.3d 1466 (Fed. Cir. 1997) ..............................................................17.

*Hess v. Advanced Cardiovascular Sys., Inc.*,
    106 F.3d 976 (Fed. Cir. 1997) .......................................16, 17 , 35

*Hoover v. Walsh*,
    682 F.3d 481 (6th Cir. 2012)................................................................. 16

*Huff v. Metropolitan Life Ins. Co.*,
    675 F.2d 119 (6th Cir. 1982) .........................................................57

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
    802 F.2d 1367 (Fed. Cir. 1986) ....................................................17

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977)...........................................................................39

*Kewanee Oil Co. v. Bicron Corp.*,
    416 U.S. 470 (1974)...........................................................................38

*Lawyers' Fund for Client Prot. v. Gateway State Bank*,
    239 A.D.2d 826 (N.Y. App. Div. 1997)............................................49

*Linear Tech. Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) ..........................................*passim*

*Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*,
    755 F.2d 158 (Fed. Cir. 1985) ...................................50, 51, 52

*McElmurry v. Arkansas Power & Light Co.*,
    995 F.2d 1576 (Fed. Cir. 1993) ....................................................54

*Morse v. Porter*,
    155 U.S.P.Q. 280 (Bd. Pat. Inter. 1965)......................................36

*Phonometrics, Inc. v. Westin Hotel Co.*,
    319 F.3d 1328 (Fed. Cir. 2003) .............................................56, 57

*Price v. Symsek,*
 988 F.2d 1187 (Fed.Cir.1993) ........................................................ 18

*Rice v. Santa Fe Elevator Corp.,*
 331 U.S. 218 (1947) .................................................................... 39

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,*
 758 F.2d 613 (Fed. Cir. 1985) ...................................................... 17.

*Shum v. Intel,*
 499 F.3d 1272 (Fed. Cir. 2007) ................................................. 46, 47

*Sirico v. F.G.G. Productions., Inc.,*
 71 A.D.3d 429 (N.Y. App. Div. 2010) ...................................... 49, 50

*St. John's University v. Bolton,*
 757 F. Supp. 2d 144 (E.D.N.Y. 2010) .................................. 50, 51, 52

*Stocker v. U.S.,*
 705 F.3d 225 (6th Cir. 2013) ................................................. 28, 37

*Tavory v. NTP, Inc.,*
 297 Fed. App'x. 976 (Fed. Cir. 2008) ....................................*passim*

*Tech. Patents LLC v. T-Mobile (UK) Ltd.,*
 700 F.3d 482 (Fed. Cir. 2012) ........................................................ 29

*TransCore, LP v. Elec. Transaction Consultants Corp.,*
 563 F.3d 1271 (Fed. Cir. 2009) ..................................................... 54

*Trovan, Ltd. v. Sokymat SA, Irori,*
 299 F.3d 1292 (Fed. Cir. 2002) ..................................................... 18

*Turcar, LLC v. I.R.S.,*
 451 Fed. App'x. 509 (6th Cir. 2011) ....................................... 56, 57

*Ultra-Precision Mfg. v. Ford Motor Co.,*
 411 F.3d 1369 (Fed. Cir. 2005) ................................................ 39-40, 46

*United States v. Johnson,*
 440 F.3d 832 (6th Cir. 2006) ....................................................... 28

*Univ. of Colorado Found. v. Am. Cyanamid Co.*, (*Cyanamid IV*)
    196 F.3d 1366 (Fed. Cir. 1999) .......................................................... *passim*

*Univ. of Colorado Found. v. Am. Cyanamid Co.*, (*Cyanamid VI*)
    342 F.3d 1298 (Fed. Cir. 2003) ...........................................................*passim*

*Westminister Properties, Ltd. v. Kass*,
    624 N.Y.S.2d 738 (N.Y. Sup. 1995) .....................................................51, 52

## Statutes:

35 USC §§ 1–390 ...............................................................................42, 44

35 USC § 135 ...........................................................................................42

35 USC § 154(a)(1) ..................................................................................54

35 USC § 256 ....................................................................10, 14, 42, 44

35 USC § 262 ...................................................................40, 45, 46, 47

## Rules:

Fed. R. Civ. P. 12(b)(6) ....................................................................12, 47

Fed. R. Civ. P. 56(a) ................................................................................ 16

Fed. R. Civ. P. 68 ......................................................................................2

# STATEMENT OF THE ISSUES

Defendants-Appellees agree with Plaintiff-Appellant Bassali that the scope of this appeal is limited to the following issues:

1. "Whether the district court committed reversible error in ruling, on summary judgment, that Plaintiff-Appellant Bassali is not the sole inventor on any patents-in-suit . . . "; and

2. "Whether the district court committed reversible error by granting summary judgment dismissing Bassali's unjust enrichment claim as (a) preempted by federal patent law . . . and (b) barred by the statute of limitations . . . ."

Defendants, however, disagree with—and disregard as extraneous—the remainder of Bassali's Statement of the Issues, including Bassali's characterizations of the pertinent facts and of the district court's decisions and the bases therefor.

# STATEMENT OF THE CASE

Except as follows, Defendants agree with Plaintiff's Statement of the Case:

1.    Defendants do not concede that Plaintiff is "at least" a joint inventor of any of the patents at issue before the district court. In an effort to reduce litigation costs, and to narrow the scope of the issues in dispute, Defendants extended, and Plaintiff accepted, a Fed. R. Civ. P. 68 Offer of Judgment concerning the only remaining issue that was before the district court, and have, thus, conceded that Plaintiff is a joint inventor of those patents. Defendants expressly deny that Bassali is the sole inventor of any of the patents.

2.    The following assertion contained in Plaintiff's Statement of the Case—for which Plaintiff has not cited any authority—is false and unsupported by any record evidence: "Separately, it was revealed during discovery that pertinent documents were missing from Johnson Controls' files, and that prior representations to Bassali concerning an earlier investigation into his claim for inventorship were false."

## STATEMENT OF THE FACTS

Plaintiff-Appellant Bassali's Statement of the Facts is rife with factual inaccuracies and mischaracterizations. He often neglects to cite to any evidence in support of his factual assertions. Where he does identify evidence, it frequently fails to support the propositions for which it is cited. Accordingly, Defendants' view of the pertinent facts is as follows:

## I.      The Prince Universal Garage Door Opener Project

Defendants-Appellees[1] ("Defendants" or "JCI") are in the automotive supply industry, and Plaintiff-Appellant—Fred Bassali—("Plaintiff" or "Bassali") is a consulting engineer with radio frequency ("RF") design experience. On August 5, 1988, before JCI's predecessor, Prince Electronics[2], engaged Bassali, Prince employees outlined a project to develop a "patentable FCC approved Trainable G.D.O. [Garage Door Opener]." Project Outline (A4570). The project outline was approved by company management, and Mark Zeinstra—a Prince engineer—was chosen to serve as the lead engineer on the project. Project Outline (A4569).

---

[1] The Defendants-Appellees, all of whom join in the present brief, are various Johnson Controls business entities: Johnson Controls, Inc., Johnson Controls Technology Company, Johnson Controls Interiors L.L.C., and Hoover Universal, Inc.

[2] Prince Electronics was acquired by Defendant Johnson Controls, Inc. in 1996.

Shortly thereafter, on August 18, 1988[3], Zeinstra drafted a document titled "Preliminary Universal GDO Concerns and Costs", which described a method of training a universal garage door opener ("UGDO"). (A1304) From then until February 20, 1990, when Bassali first learned of the UGDO project (Duckworth Dep. Tr. 14:13-15:24 (A4232–33)), Zeinstra continued to develop "conceptual ideas about how the product would work." Duckworth Dep. Tr. 84:21-25 (A2741). Zeinstra discussed those ideas with a fellow Prince engineer, Paul Duckworth, sometime between October 1989 and February 1990. Duckworth Dep. Tr. 84:11-15 (A2741).

## II.    Prince's Engagement of Bassali

In October 1989, Bassali was engaged by Prince as a consultant to assist with the RF aspects of a different project known as remote keyless entry ("RKE"). Engagement Letter (A4157–58). Contrary to Bassali's assertions, there is no evidence that Defendants were having "problems" with RKE. Rather, they hired Bassali to help achieve a "production ready" design. *See* Program Update (A4643); Engagement Letter (A4157–58).

---

[3] Bassali's claim that "[t]he date [8/18/88] is inconsistent with other dates within the document and with the Project Outline" is unsupported. Pl. Br., at 17. The timing of the "Preliminary Universal GDO Concerns and Costs" document is corroborated by the Project Outline dated 13 days earlier (A1302-1303), the authenticity of which Bassali has never challenged.

## III.   The February 1990 Meeting

In February 1990, during Bassali's only visit to JCI's facility,[4] he was asked for the first time about the UGDO project. Duckworth Dep. Tr. 14:13-15:24 (A4232–33); Project Outline (A4569-4570). Bassali claims that Defendants did "no work" on the UGDO between August 1988 and February 1990, but to make this claim, he relies only on a lack of written evidence—while ignoring the testimonial evidence. *Cf.* Pl. Br. at 7, *with*, *e.g.,* Duckworth Dep. Tr. 84:11-25 (A2741). Accordingly, Bassali has not supported his assertion that Prince did no work on the UGDO from August 1988 through February 1990.[5]

The attendees at the meeting where UGDO was first discussed with Bassali were Bassali, Zeinstra, Duckworth, and another Prince engineer, Paul Van Lente. During that meeting, Zeinstra was the first to approach and draw on the whiteboard concerning UGDO. Duckworth Dep. Tr. 83:13-84:1 (A2741); Van Lente Dep. Tr.

---

[4] The primary purpose of Bassali's visit was the RKE project. Duckworth Dep. Tr. 12:14-25 (A2723). Prior to that visit, Bassali was not asked to and does not claim to have performed any work on the UGDO project. *See* Pl. Br., at 8.

[5] While Bassali repeatedly attempted before the district court to cast JCI as a bad actor with respect to the alleged "missing evidence"—including attempting to assert multiple claims for fraud. *See* Third Amended Complaint, Dkt. 252-5 (A3419-3445)—those efforts failed. The fraud claims were dismissed for failure to state a claim (Dkt. 340 (A60-78))—a ruling which Bassali has not raised in his appeal brief. The district court never made any finding that JCI had engaged in any misconduct with respect to the alleged "missing evidence."

25:6-15 (A2531). It was also Zeinstra who drew the first block diagram on the whiteboard—not Bassali. Van Lente Dep. Tr. 25:6-15 (A2531). Accordingly, Bassali's personal recollection of the February 1990 meeting (*see* Pl. Br., at 9) is unsupported by the evidence.

Bassali's account of what he drew on the whiteboard is also uncorroborated. He has asserted that the "block diagram circuit [he claims he drew on the whiteboard] was the same as Figures 9a and 16 of the '885 patent." (Pl. Br., at 9). For support, Bassali cites to the following testimony:

> Q.   Is it your recollection that one or more of the ideas described within this box that we've been talking about in figure 9-A, those components were described by Mr. Bassali when he wrote on the whiteboard in February of 1990?
>
> A.   Yes, some of them are, <u>not all of them</u>, but some of them.

Duckworth Dep. Tr. 37:8-17 (A4254) (emphasis added). That testimony, however, directly contradicts Bassali's claim. Duckworth actually testified that whatever Bassali drew was <u>not the same</u> as Figures 9a and 16 because it did not include all of the components depicted in the relevant portions of those figures. Duckworth Dep. Tr. 37:8-17 (A4254).

Separately, Duckworth testified that during the February 1990 meeting, he took some notes in a light blue notebook. *See* Duckworth Dep. Tr. 17:4-18:2 (A4235-4236). Duckworth never testified, however, that he "wrote the details of Mr. Bassali's [alleged] invention" (Pl. Br., at 11) in the notebook (S*ee* Duckworth

Dep. Tr. 17:4-18:2 (A4235-4236)), and there is no evidence that Duckworth's notebook contained "the written description of Mr. Bassali's [alleged] first block diagram." Pl. Br., at 18.

## IV.    The Filing and Issuance of the Patents-in-Suit

About six months passed between the February 1990 meeting and the filing of the first Patent-in-Suit—the '885 patent—on August 14, 1990.[6] '885 Pat. (A164-208). There is no dispute that Bassali did not perform any work on UGDO during that time. *See* Pl. Br., at 13. Similarly, he has cited no evidence that he performed any work on the project prior to the February 1990 meeting. *See* Pl. Br., at 8. In other words, Bassali's sole-inventorship claims are based *entirely* on his alleged contributions during that one meeting. *See* Pl. Br, at 9-10.

Although the '885 patent was filed in August 1990, it did not issue until March 25, 1997. '885 Pat. (A164). The reasons for allowability, as set forth by the Board of Patent Appeals and Interferences, were as follows:

> [W]e agree with applicants' argument (Brief, page 17) that "the patents do not show or suggest providing a system wherein a reference signal frequency is varied until it matches the carrier frequency of a signal from a remote control to identify the carrier frequency of the remote control signal."

---

[6] Hereinafter, "Patents-in-Suit" refers to U.S. Pat. Nos. 5,614,885 ("the '885 patent") and 5,583,485 ("the '485 patent"). These are the only two patents of which Bassali seeks to be named the sole inventor. For the remaining 14 patents at issue before the district court, Bassali sought to be named only a co-inventor. The parties' inventorship dispute with respect to those patents has been resolved by way of an Offer of Judgment. Dkt. 360 (A4808-4816).

Decision on Appeal, at 14 (A3938). Thus, contrary to Bassali's assertions (Pl. Br., at 12), it was not his alleged circuit that was found patentable. *Id.* Rather, it was the novel *function* of varying a reference signal frequency "until it matches the carrier frequency of a signal from a remote control" that was found patentable. *Id.* Yet, Bassali makes no claim to have conceived of that novel functionality—his arguments are focused instead on the design of a "specific circuit" that, he claims, he alone designed during the course of a single meeting on February 20, 1990. *See* Pl. Br., at 9-10, 12.

As for the other Patent-in-Suit—the '485 patent—the application from which it issued (filed June 5, 1995) was a continuation of the '885 patent application. '485 Pat. (A209). Although the '485 patent was filed almost five years later, it issued first—on December 10, 1996. *Id.* The claims of the '485 patent are directed to a trainable RF transmitter system. Relative to the '885 patent, the claims of the '485 patent are significantly longer and more detailed. *Id.*, Col. 24-30 (A249-252). Notwithstanding, Bassali's inventorship story with respect to the '485 patent is identical to the '885 patent—that he alone fully conceived of both patents at the February 1990 meeting. Pl. Br., at 9-10.

## V.    The Parties' Initial Correspondence

Several years after the Patents-in-Suit issued, in January 2000, Bassali's counsel contacted JCI claiming that Bassali was an inventor of several patents held by JCI, including the Patents-in-Suit.[7] Ludwig Ltr. (A1293–1294). After reviewing Bassali's claims, JCI's counsel responded by denying the inventorship claims and providing documents supporting their position that conception of the Patents-in-Suit occurred prior to Bassali's hiring. Vitek Ltr. (A1301–1306). Included in those documents were, *inter alia*, dated and undated versions of the above-mentioned "Preliminary Universal GDO Concerns and Costs" document. *See id*. (A1304–1305).

Although Bassali has repeatedly claimed that the dated version of that document was falsified, his inflammatory allegations are unsupported by the evidence. As a preliminary matter, Bassali has never addressed why JCI would have provided both the dated *and undated* versions of an (allegedly) falsified document. Bassali has similarly never identified any evidence that the "8/18/88" date on the document is false or that it was "backdated in an attempt to disprove Mr. Bassali's inventorship claim." Pl. Br., at 17. Instead, Bassali relies on the tepid opinion of his document expert that "the 'MLZ 8/18/88' entry . . . was added at a different time and under different conditions than the remainder of the print . . . ."

---

[7] Bassali has admitted that he arrived at this conclusion sometime in 1999. Bassali Dep. Tr. 109:1-24 (A2370).

Kullman Expert Report (A4144). Even his own document expert admitted, however, that he could not determine the sequence in which the different portions of text were added to the page, and that it may have been only seconds apart. Kullman Dep. Tr. 30:18-31:11, 101:4-11 (A4848-4850).

In response, Bassali's counsel wrote on April 13, 2000, re-asserting his inventorship allegations and providing a series of documents including undated block diagrams. Ludwig Ltr. (A1307-1322). On May 24, 2000, JCI's counsel replied, requesting that Bassali provide dated versions of those documents. Foss Ltr. (A1497-1498). However, on June 16, 2000, Bassali's counsel refused, asserting, "Dated copies… can be found in the files of the Prince Corporation." Ludwig Ltr. (A1499-1500). Bassali having failed to substantiate his allegations, JCI discontinued the correspondence. Bassali's counsel wrote two more letters to JCI requesting a "substantive" response to his April 13 letter (*See* Ludwig Ltrs. (A1501-1502, A1503-1504)), and then Bassali went silent until 2006.

## VI.  The Present Lawsuit

More than six years after first asserting that he was an inventor of the Patents-in-Suit, Bassali finally filed the present lawsuit. Dkt. 105, Ex. 13 (A1517-1522). Bassali's initial Complaint asserted only one count for correction of inventorship under 35 USC § 256. *Id.* It was not until May 22, 2007 that Bassali

filed a Second Amended Complaint[8] adding a count for unjust enrichment. Dkt. 105, Ex. 15 (A1530-1537). It is this Second Amended Complaint that was the operative complaint for purposes of the order (which Bassali is presently appealing) dismissing on summary judgment Bassali's unjust enrichment claim. *See* Dkt. 159, at 5, n.9 (A8).[9]

Then, on May 29, 2008, Bassali moved for leave to file a third amended complaint to add a claim for fraudulent nondisclosure arising out of JCI's alleged failure to disclose to Bassali that the Patents-in-Suit had been filed. Dkt. 62 (A657); Dkt. 63-2 (A689-696). On July 2, 2008, that motion was denied without prejudice by the magistrate judge who gave Bassali two weeks to file a renewed motion. Dkt. 75 (A725). Two weeks later, Bassali filed a Motion for Reconsideration (Dkt. 78 (A4851)) attaching an updated proposed third amended complaint, which added the allegation that "key documents were altered by JCI." Dkt. 79-2, ¶ 39 (A750). In response, on September 22, 2008, the magistrate judge again denied leave to amend on the basis that the fraud claim was barred by the statute of limitations. Dkt. 85 (A776); Dkt. 86, at 16 (A792). Bassali never asserted to the district court any objections to the magistrate judge's orders.

---

[8] Bassali had already filed a first amended complaint on March 30, 2007, in which he merely added a patent to the dispute. Dkt. 8 (A637-642).

[9] Page citations to docket entries before the district court reflect ECF page numbering.

More than two years later, on January 5, 2011, Bassali filed another motion for leave to file a third amended complaint. Dkt. 180 (A2660-2661). Although the court had, in the interim, granted summary judgment to Defendants (*See* Dkt. 159, dated May 12, 2010 (A4-25)) on Bassali's unjust enrichment claim, his proposed Third Amended Complaint purported to reassert a claim for unjust enrichment and to add claims for declaration of patent ownership, patent infringement, fraudulent nondisclosure, fraudulent concealment, and false marking. Dkt. 181-1 (A2686-2716). On April 25, 2011, the district court granted the motion in part, allowing Bassali to add only the fraud claims.[10] Dkt. 234, at 8 (A59). Then, on May 25, 2011, Bassali filed his Third Amended Complaint (Dkt. 252 (A3327-3351)), which is the operative complaint for purposes of the summary judgment order dismissing Bassali's sole inventorship claims. Dkt. 341, at 1 (A89).

---

[10] These fraud claims were later dismissed pursuant to Fed. R. Civ. P. 12(b)(6) (*See* Dkt. 340 (A60-78)), a ruling which Bassali has not challenged in his appeal brief.

## SUMMARY OF THE ARGUMENT

Bassali has failed to show that the district court erred in dismissing at the summary judgment stage his claim for sole inventorship or his claim for unjust enrichment.

With respect to sole inventorship, Bassali bears the burden of proving by clear and convincing evidence that he was the only person who contributed to the conception of the claimed inventions. Bassali's testimony alone is insufficient to satisfy that burden—his claims must be corroborated by other available evidence. The other evidence cited by Bassali, however, is insufficient to corroborate that he is the *sole* inventor of the two Patents-in-Suit. In fact, Bassali's contentions to the contrary are based entirely on mischaracterizations of the evidence, incendiary conspiracy theories, and ambiguous "circumstantial evidence." Accordingly, the district court did not err in granting summary judgment for JCI on Bassali's claims for sole inventorship.

With respect to unjust enrichment, the district court correctly found that Bassali's claim—asserted for the first time in his May 22, 2007 Second Amended Complaint—was both preempted by federal law and barred by the statute of limitations. On preemption, Bassali—who never filed his own patent application for the inventions set forth in the Patents-in-Suit—is attempting to obtain the benefits of patent protection through a state law claim for unjust enrichment.

Congress, however, has enumerated the remedies that are available to an inventor allegedly omitted from a patent—including an action to correct inventorship under 35 USC § 256 and an interference proceeding before the PTO. Thus, Congress has occupied the field of patent protection. Bassali may not circumvent Federal patent law and procedure with a state law claim for unjust enrichment. The cases cited by him do not hold otherwise. Indeed, in those cases, the defendant had breached a duty of confidentiality to the plaintiff giving rise to a claim for unjust enrichment that existed irrespective of patent law; patent law only entered the analysis in the context of calculating damages. Those cases do not hold that a mere misnaming of inventorship on a patent application—without additional facts—gives rise to a state law claim for unjust enrichment that is not preempted by Federal law. Accordingly, the district court did not err in finding at the summary judgment stage that Bassali's unjust enrichment claim was preempted by federal law.

Finally, with regard to the timeliness of Bassali's unjust enrichment claim, the district court correctly found that it was barred by the statute of limitations. As an initial matter, Bassali does not address the case law relied upon by the district court or present any binding case law demanding a different result. Moreover, Bassali's position that the claim re-accrues every time JCI incurs some monetary benefit traceable to the Patents-in-Suit is untenable as a matter of policy. Indeed, under the scheme advanced by Bassali, claims for unjust enrichment would survive

indefinitely—even decades after the events giving rise to the alleged duty of restitution—which would defeat the very purpose of a statute of limitations. Lastly, Bassali's position that his claim for unjust enrichment re-accrued whenever JCI received monetary benefits flowing from the Patents-in-Suit is based on evidence he cited for the first time in a motion for reconsideration (filed almost 12 months after the Court dismissed his unjust enrichment claim). Bassali provides no explanation as to why the presentation of such evidence before this Court is timely. Accordingly, the district court did not err in ruling that Bassali's unjust enrichment claim was barred by the statute of limitations.

For all of these reasons, JCI respectfully requests that the judgment of the district court be AFFIRMED in all respects.

## ARGUMENT

### I. The District Court Did Not Err in Granting Summary Judgment for Defendants on Plaintiff's Sole Inventorship Claims

#### A. Legal Framework—Summary Judgment and Inventorship

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). A grant of summary judgment is reviewed in accordance with regional circuit law. *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys.*, 725 F.3d 1341, 1347 (Fed. Cir. 2013). Under controlling Sixth Circuit precedent, a district court's decision to grant summary judgment is reviewed *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the of the nonmoving party. *Hoover v. Walsh*, 682 F.3d 481, 492 (6th Cir. 2012).

As for inventorship, it is a question of law—based on underlying findings of fact—that is reviewed *de novo*. *See Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1304 (Fed. Cir. 2003). There is, however, a presumption that the named inventors on an issued patent are correct. *Hess v. Advanced*

*Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997). Thus, "[a] party seeking correction of inventorship must provide clear and convincing evidence of inventorship." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318–19 (Fed. Cir. 2004) (internal citation omitted). In an action for correction of inventorship, "[s]ummary judgment is properly granted if the evidence . . . fails to establish the inventorship of an omitted inventor by clear and convincing evidence." *Id.* at 1327 (internal citation omitted).

In determining whether a person qualifies as an inventor, the "touchstone" of inventorship is conception. *Hess*, 106 F.3d at 980. Conception requires a "definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986). An inventor may obtain the assistance of others to perfect his invention without losing his patent rights. *See Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 624 (Fed. Cir. 1985). "[O]ne does not[, however,] qualify as a joint inventor by merely assisting the actual inventor after conception of the claimed invention." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). "The basic exercise of the normal skill expected of one skilled in the art, without an inventive act, also does not make one a joint inventor." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). "'Inventorship' in the law of patents arises from conception, not development or

reduction to practice." *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1324 (Fed. Cir. 2000).

"To meet the clear and convincing evidentiary burden, the alleged co-inventor[] must prove [his] contribution to the conception with more than [his] own testimony concerning the relevant facts." *Linear Tech.*, 379 F.3d at 1327. He must proffer evidence corroborating his own testimony. *Chen v. Bouchard*, 347 F.3d 1299, 1309 (Fed. Cir. 2003). "[W]hether a putative inventor's testimony has been sufficiently corroborated is determined by a 'rule of reason' analysis, in which 'an evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached.'" *Id.* (quoting *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed.Cir.1993)). The "rule of reason" analysis, however, does not negate the corroboration requirement. *Id.* at 1309–10. While evidence of corroboration may come in various forms, the preferable form is physical records that were made contemporaneously with the alleged prior invention. *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).

**B. Plaintiff Has Not Identified Any Evidence that Raises a Genuine Issue of Fact Concerning Whether He Is the Sole-Inventor of the Patents-in-Suit**

Bassali's inventorship story for both Patents-in-Suit is identical and thus fails for the same primary reason—his account of the February 1990 meeting (where he claims he single-handedly conceived of the patents) is completely

uncorroborated.[11] Indeed, as explained above, a putative inventor's own testimony is alone insufficient to overcome summary judgment. *Linear Tech.*, 379 F.3d at 1327. While Bassali asserts that there are "six sources of evidence" corroborating his claims, none of these constitutes clear and convincing that he was the *sole* inventor of the Patents-in-Suit or raises a genuine issue of fact in his favor.

### 1. The Testimony of Paul Duckworth Does Not Corroborate Plaintiff's Inventorship Claim

Bassali primarily relies upon the testimony of Paul Duckworth, a former Prince engineer. Yet, Duckworth's testimony does not support that Bassali *alone*—and none of the originally-named inventors—contributed to the conception of the Patents-in-Suit.

Bassali's claim is that he drew the alleged "first block diagram of a circuit for a universal garage door opener" on a whiteboard at the February 1990 meeting. Pl. Br., at 22. Bassali claims that this story is "directly corroborated" by Duckworth's testimony. *Id.* To get to this point, however, Bassali has selectively ignored critical aspects of Duckworth's testimony—which the district court did not do in evaluating Bassali's claims. Read fairly and entirely,

---

[11] Moreover, for at least the '485 patent, Bassali's claim of sole inventorship fails for an even more fundamental reason—he has not cited to any testimony wherein he explains how his alleged "circuit" maps to the claims of the '485 patent, or any other testimony directly addressing the '485 patent. *See* Pl. Br., at 22. Thus, for the '485 patent, the question is not whether Bassali's inventorship story is corroborated, but whether he has *any evidence at all*—even his own testimony—to support it.

Duckworth's testimony at best supports a finding that conception of the Patents-in-Suit was a joint effort between Bassali and JCI. *See, e.g.*, Duckworth Dep. Tr. 83:24-84:1 (A2741) ("There was a fair amount of dialogue in the meeting, so I mean both I believe both Fred [Bassali] and Mark [Zeinstra] drew on the whiteboard.").

Illustrative of the testimony that Bassali ignores is Duckworth's description of Bassali's alleged whiteboard drawing:

> Q.　. . . Now, do you remember Mr. Bassali doing any work drawing things like block diagrams on a whiteboard?
>
> A.　Yes.
>
> Q.　Tell me what you remember about that.
>
> A.　I remember it had a diode on it. It had a symbol for a VCO. A symbol for a mixer.
>
> Q.　Do you remember anything else as you sit here now?
>
> A.　I can't really say with confidence beyond that. There were other elements, I will say that. But I can't remember specifically what they were.

Duckworth Dep. Tr. 16:19-17:3 (A4234–4235). Thus, at most Duckworth recalled—during a deposition taken almost 20 years after the February 1990 meeting—that Bassali drew a diagram that included a "diode," "a symbol for a VCO," "a symbol for a mixer,"[12] and "other elements." Duckworth Dep. Tr. 16:19-

---

[12] Duckworth later testified that he was "not sure if there was actually a mixer on that diagram." Duckworth Dep. Tr. 21:11-12 (A4239).

17:3 (A4234–4235). The testimony does not support the claim that Bassali created, on the spur of the moment, a fully-developed block diagram that JCI's attorneys later incorporated verbatim into the Patents-in-Suit.

Thus, when referring to "that first block diagram," Duckworth is referring only to a diagram that included a diode, a VCO, perhaps a mixer, and other elements. *See* Duckworth Dep. Tr. 28:13-22 (A4245). That is the only diagram that Duckworth remembers and to which he has previously referred. Duckworth Dep. Tr. 16:25-17:3 (A4234–4235).

Similarly, when Duckworth testified—as cited in Bassali's Brief—that Bassali's block diagram provided "[t]he arrangement of those circuit components, those blocks and how they were to be connected," again, Duckworth was referring only to those elements he could recall while acknowledging he could not recall all of the elements of the diagram. A full reading of his testimony yields no other reasonable interpretation. *See* Duckworth Dep. Tr. 28:13-22 (A4245). Thus, the fact that Bassali drew a block diagram that included a diode, a VCO, a mixer, and other unnamed components—even if he were the first one to draw such a diagram—is simply not enough to render him the *sole* inventor of the Patents-in-Suits, particularly because who drew on the whiteboard first is not material to the issue of sole inventorship (*see infra* Argument Section I.C.2) and because the contribution Bassali claims is not the aspect of the invention that was found patentable. *See, e.g.*,

21

'885 Pat., Claim 1 (A204); *also* Decision on Appeal, at 14 (A3938); *also* Nixon Report, p. 33 (A3882) ("Without the controlling computer programs, the RF circuits [allegedly designed by Bassali] do not operate to provide the patentable or inventive features. Indeed, without the controlling computer programs in place and executing, the RF circuits [have] none of the claimed functionality.")

Moreover, Duckworth did not testify that Bassali was the first to draw on the whiteboard. Duckworth Dep. Tr. 83:13-84:1 (A2741). Rather, Duckworth testified that Zeinstra was the first to draw. Duckworth Dep. Tr. 83:13-84:1 (A2741). Duckworth further testified that Zeinstra had discussed with him "conceptual ideas about how the product would work" prior to the February 1990 meeting. Duckworth Dep. Tr. 84:2-20 (A2741). Finally, Duckworth testified that Zeinstra "had already begun to conceptualize" and "had something in mind" for UGDO prior to that same meeting. Duckworth Dep. Tr. 84:21-25 (A2741). For all of these reasons, Duckworth's testimony—even viewed in a light most favorable to Bassali—does not corroborate his claim that he was the *sole* inventor, and does not rebut the presumption of correct inventorship.

### 2. The Testimony of the Originally-Named Inventors Does Not Corroborate Plaintiff's Inventorship Claim

Bassali next relies upon the testimony of the other named inventors of the Patents-in-Suit. None of that testimony, however, corroborates Bassali's claim or rebuts the presumption that the inventorship designations were correct.

Regarding Paul Van Lente, Bassali relies on his testimony for the limited proposition that Van Lente himself did not see his contributions in the claims of the Patents-In-Suit. Pl. Br, at 23. Bassali, however, ignores Van Lente's testimony indicating that Mark Zeinstra was the primary inventor. In fact, Van Lente testified as follows:

> I have a fairly good memory of Mr. Zeinstra stepping up to the whiteboard and starting to, because Mark is a whiteboard man, he likes to do this, and starting to give Fred a little information regarding this potential HomeLink product Mark had -- the concept was there. And Mark already in his -- he had a block diagram of this thing done, how technically how he would do it. Not a detailed circuit diagram, but a block diagram. And I remember Mark drawing up the block diagram on the whiteboard.

Van Lente Dep. Tr. 25:6-15 (A2531). Thus, it was Mark Zeinstra who drew the first block diagram—not Bassali. Accordingly, Van Lente's testimony is consistent with Duckworth's testimony on this point.

Regarding Zeinstra's testimony, Bassali again tries to prove too much with limited testimony. In particular, Bassali relies upon Zeinstra's inability to recall the details of a meeting and patent application that occurred 20 years earlier to prove that Zeinstra made no inventive contributions. *See* Pl. Br., at 24–25. Bassali cites to various excerpts from Zeinstra's August 2009 and September 2011 depositions indicating that Zeinstra *no longer* remembered the specific design details of the claimed invention. *See id.* The testimony was clear, however, that Zeinstra was testifying only as to his *current* recollections—not as to what he knew at the time

the Patents-in-Suit were conceived. *See* Zeinstra Tr. 101:7-13 (A4522), 107:10-11 (A4525); *see also* Zeinstra 30(b)(6) Dep. Tr 16:22-17:15 (A4211-4212), 31:16-23 (A4219). It simply does not follow that, because Zeinstra could no longer remember details of the invention, he lacked the requisite knowledge and expertise twenty years ago to conceive the Patents-in-Suit. In fact, Zeinstra has been a critically important inventor for JCI over the years and has been a named inventor on over 30 patents. That he cannot recall the details of what he contributed to two patents drafted two decades earlier proves only that the passage of time does not increase a person's ability to recall details. This is precisely why there exists a presumption that inventorship was correct when the patent issued.

Finally, as for the remaining originally-named inventors—William DeVree and Michael Suman—Bassali relies on their testimony only for the proposition that they themselves did not contribute to the conception of the Patents-in-Suit. *See* Pl. Br., at 24. Again, this is not sufficient to overcome the presumption that inventorship is correct, and more importantly does nothing to rebut the unequivocal evidence that Mark Zeinstra was an inventor. *See id.* Accordingly, their testimony—viewed even in a light most favorable to Bassali—does not constitute clear and convincing evidence that Bassali was the sole inventor of the Patents-in-Suit. *See Linear Tech.*, 379 F.3d at 1327.

### 3. The Block Diagram in Plaintiff's Notebook Does Not Corroborate His Inventorship Story

The next piece of evidence Bassali relies upon is a block diagram of the UGDO that appears in one of his own notebooks. *See* Pl. Br., at 25–26. Bassali, however, admits he created that document well after the February 1990 meeting and even after the patent application was filed on August 14, 1990. Bassali Dep. Tr. 132:17-20 (A3765); Pl. Br., at 25; '885 Pat. (A164-208). Moreover, Bassali's claim that it was a "re-creation" of what he drew on the whiteboard in February 1990 is at best uncorroborated inventor testimony and at worst unsupported attorney argument. Neither of these is sufficient to rebut the presumption of correct inventorship or to raise a genuine issue of fact—especially in light of Bassali's clear and convincing evidentiary burden—that Bassali was the sole inventor of the Patents-in-Suit. *See Linear Tech.*, 379 F.3d at 1327.

### 4. The Alleged "Circumstantial Evidence" Does Not Corroborate Plaintiff's Claim

Bassali next asserts that "circumstantial evidence" supports his sole inventorship claims in two ways, each addressed below.

#### a) The Alleged "Quarterly Engineering Reports" Do Not Advance Plaintiff's Case

First, Bassali argues that because JCI's "quarterly engineering reports" do not mention a universal garage door opener during the time period from August 1988 through February 1990, JCI could not have conceived the Patents-in-Suit

25

prior to the February 1990 meeting. However, the alleged "quarterly engineering reports" (which Bassali compiled from a number of documents produced by JCI (*See* A4571–467)) do not support Bassali's case.

The only way these documents might be meaningful to the analysis is if Bassali could also show that it was, for example, JCI's policy to record all inventions and progress on these inventions in a "quarterly report." Bassali has made no such showing, however. Nor has he provided any evidence or testimony that the reports reflected all work being performed by JCI at any given time. Thus, the "quarterly engineering reports" fail to either corroborate Bassali's claim that JCI was not involved in the conception of the Patents-In-Suit or—in light of his clear and convincing evidentiary burden—raise a genuine fact issue in his favor.

### b) Defendants' Privilege Logs Do Not Advance Plaintiff's Case

Bassali's second argument is that a line item in JCI's privilege log is "circumstantial evidence" in support of his claims. According to Bassali, Defendants' privilege log indicates that "on March 27, 1990, Prince wrote to its patent attorneys for the first time about filing a patent application for a universal garage door opener." Pl. Br., at 26. The privilege log entry to which Bassali cites appears, in its entirety, as follows:

| 139 | US 5614885 | Attorney-Client | 3/27/1990 | C. Flowerday | H. Reick | J. Spoelhof W. Jones L. Heneveld Master File | Letter | | Re: A-619 Rear View Mirror with Multiple Options |

JCI's '885 Patent Privilege Log, line 139 (A4677). Without any supporting testimony, it is merely wishful thinking to assert that "on March 27, 1990, Prince wrote to its patent attorneys for the first time about filing a patent application for a universal garage door opener." Pl. Br., at 26. More importantly, the magistrate judge conducted an in camera review of JCI's privileged documents and noted that "[n]one of [them] is a 'smoking gun'; nor do any of them advance Plaintiff's claims in this lawsuit." Dkt. 318 (A4710-4711). Thus, the privilege log entry does not corroborate Bassali's claims, and does not constitute clear and convincing evidence that Bassali was the sole inventor of the Patents-In-Suit. *Linear Tech.*, 379 F.3d at 1327.

### 5. The Alleged Absence of Certain Documents Does Not Corroborate Plaintiff's Claim

In classic conspiracy theorist fashion, Bassali alleges that the absence of certain documents (which he speculates would have supported his case) corroborates his claim for sole inventorship. This argument is riddled with substantive and procedural flaws.

With regard to substance, under Sixth Circuit precedent a party must show the following in order to obtain an adverse inference for missing evidence:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to [a] party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Stocker v. U.S.*, 705 F.3d 225, 235 (6th Cir. 2013). A district court's decision whether to grant an adverse inference is reviewed for an abuse of discretion. *Id.* As an initial matter, Bassali does not address this standard or even how or when the district court abused its discretion in applying it. Indeed, the district court never had occasion to apply this standard because Bassali never sought an adverse inference before the district court. Accordingly, Bassali has failed to show that he is entitled to an adverse inference from any allegedly "lost or destroyed" evidence, even if one accepts as true that relevant evidence was lost or destroyed.

With regard to procedure, Bassali's request for an adverse inference is untimely and inappropriate at this stage, as he failed to raise it before the district court. *See* Dkt. 314, at 23-24 (A4200-4201). While Bassali's Brief in Opposition to Defendants' Motion for Summary Judgment (Dkt. 314) (A4178-4204) included some recitation of alleged facts concerning allegedly "missing evidence," Bassali never addressed the applicable legal standard for an adverse inference or expressly requested that the district court draw one. Dkt. 314, at 23-24 (A4200-4201). This was insufficient to raise the issue at the district court level. *United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citation and quotation omitted); *see also Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 n.5 (Fed. Cir. 2011) ("[E]videntiary objections

not raised before the trial court are deemed waived . . . ."). Thus, Bassali has waived his right to an adverse inference and cannot raise it for the first time on appeal. *Celsis In Vitro, Inc. v. Cellzdirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) ("[T]his court does not consider arguments not raised below."); *Tech. Patents LLC v. T-Mobile (UK) Ltd.*, 700 F.3d 482, 501 (Fed. Cir. 2012) (declining to address an issue for the first time on appeal because it is "most appropriately considered in the first instance by the district court.").

For these reasons, Bassali has failed to show that he is entitled to an adverse inference from any alleged missing evidence. Absent an adverse inference, alleged missing evidence is just missing—it does not corroborate his claims.

### 6. The Allegedly Falsified 'MLZ 8/18/88' Document Does Not Corroborate Plaintiff's Claim

Finally, Bassali seeks to corroborate his claim by accusing JCI of falsifying documents. Pl. Br., at 28. For the same reasons that Bassali's request for an adverse inference from allegedly "missing evidence" fails, his request for an adverse inference from an allegedly "falsified document" also fails.

More fundamentally, even if the Court were to accept as true all of Bassali's contentions concerning the 'MLZ 8/18/88' document, it does not advance his claims for sole inventorship. To be clear, JCI unequivocally denies any wrongdoing with respect to the 'MLZ 8/18/88' document. Bassali's contentions to contrary are based on nothing but the tepid opinion of his document expert that

"the 'MLZ 8/18/88' entry . . . was added at a different time and under different conditions than the remainder of the print . . . ." Kullman Expert Report (A4144). Even his own expert admitted that he could not determine the sequence in which the different portions of text were added to the page, and that it may have been only seconds apart. Kullman Dep. Tr. 30:18-31:11, 101:4-11 (A4848-4850). Nonetheless, assuming arguendo that the 'MLZ 8/18/88' notation was incorrect— *i.e.*, that Mark L. Zeinstra did not actually create the document on August 18, 1988—it follows only that the document fails to prove that its contents were generated on that date. This would in no way undermine JCI's position, supported by other documentary and testimonial evidence, that Zeinstra came to the February 1990 meeting having already fully or partially conceived of the Patents-in-Suit. Project Outline (A4569); Duckworth Dep. Tr. 84:11-25 (A2741); Van Lente Dep. Tr. 25:6-15 (A2531). Accordingly, the 'MLZ 8/18/88' document does not corroborate Bassali's claims that he is the *sole* inventor of the Patents-in-Suit.

In conclusion, Bassali has failed to present any evidence that rebuts the presumption of correct inventorship or—when viewed in a light most favorable to him—would allow a trier of fact to find by clear and convincing evidence that he was the sole inventor of the Patents-in-Suit. *See Linear Tech.*, 379 F.3d at 1318–19, 1327.

## C.   The District Court Did Not Err in Its Analysis of Plaintiff's Evidence

After presenting each of his "six sources of evidence," Bassali argues that the district court erred in its analysis of the evidence. *See* Pl. Br., at 29. Bassali claims that the district court "failed to correctly apply the law governing motions for summary judgment" by "ignor[ing] evidence, fail[ing] to view the evidence in a light most favorable to Mr. Bassali, . . .weighing . . . the evidence, and . . . ma[king] credibility findings." *Id.*   His argument, however, confuses the district court's opinion by conflating its analysis of distinct issues—namely, whether (1) he made inventive contributions to the patents and was thus potentially a co-inventor, and (2) whether he was the only person who made inventive contributions to those patents. While both claims required Bassali to show he made inventive contributions, the sole inventorship claim required him to also prove that no one from JCI made any such contributions to either patent.   The district court's holding was quite clear: it found in the first instance that Bassali had created a question of fact regarding whether he made inventive contributions as a co-inventor; as such, he was entitled to a trial on those claims.  Dkt. 341, at 18 (A106). But the district court then went on to analyze the separate issue of whether Bassali created a fact issue regarding his claim that he was the only inventor. Dkt. 341, at 19 (A107). Here, the district court was also quite clear that Bassali had failed to meet his burden to show that none of JCI's employees made

31

inventive contributions. The fundamental flaw in Bassali's analysis is that he picks and chooses the statements he thinks support his claims, but does so without regard to the context of the district court's analysis.

1.    **Plaintiff's Out-of-Context Quotations of the District Court Are Misleading**

Bassali begins with a quotation from the district court's Opinion (Dkt. 341 (A89-109)) granting-in-part and denying-in-part JCI's motion for summary judgment on inventorship. The quoted passage states, "Duckworth's testimony satisfies the requirement for corroborative evidence for Bassali's inventorship claim." Dkt. 34, at 18 (A106). Bassali argues that "summary judgment must be reversed on the basis of that statement alone." Pl. Br., at 29. Yet, Bassali ignores that the quoted statement was made in connection with joint inventorship, not sole inventorship. *See* Dkt. 341, at 18 (A106). Taken in context, the statement in no way demonstrates any error by the district court.

Bassali next quotes the district court as stating, "[t]here exists a genuine issue of material fact what Bassali drew on the whiteboard at the February 1990 meeting." Dkt. 341, at 17 (A105) Again, the district court's comment was in the context of whether Bassali had created a fact question regarding co-inventorship. The district court noted that although the testimony of others present at the February 1990 meeting was less favorable to Bassali's case than Duckworth's testimony, that discrepancy must be resolved in favor of Bassali. Thus, the district

court accepted Duckworth's testimony as true. *See* Dkt. 341, at 17-18 (A105–106). The district court was *not* analyzing the separate issue of whether Bassali's contributions at the February 20, 1990 meeting rendered him the sole inventor of the Patents-in-Suit. Thus, the quoted statement does not indicate that the district court erred in applying the summary judgment standard.

### 2. The District Court Properly Considered the Testimony of Paul Duckworth

Next, Bassali directly mischaracterizes the district court's Opinion concerning Duckworth's testimony. Specifically, he argues, "The district court decided that it could ignore Duckworth's testimony." Pl. Br., at 29. On the contrary, the district court actually gave full credit to Duckworth's statement on p. 28 of his deposition that Bassali may have given "that first block diagram." Indeed, the issue for sole-inventorship was not simply whether Bassali made an inventive contribution, but whether he made the *only* such contribution. Hence, the district court properly stated that "everyone at the meeting agreed that both Zeinstra and Bassali drew on the whiteboard and that Zeinstra and Bassali both added elements to the block diagram." Dkt. 341, at 19 (A107). Significantly, "everyone at the meeting" also included Duckworth. *See* Duckworth Dep. Tr. 83:13-84:1 (A2741). In other words, the district court found that it does not matter for purposes of sole-inventorship who wrote on the whiteboard first because all available evidence shows that Zeinstra and Bassali both wrote on the whiteboard and both made

inventive contributions. *See supra* Argument Sections IB.1-2. The only potential disputed fact was who wrote first—but, as the district court held, who wrote first (or, "notwithstanding Duckworth's statement") was not the pertinent issue.[13] As such, the district court properly held that Bassali has no claim for sole as opposed to joint inventorship. In other words, Bassali never met his burden at summary judgment of raising a genuine issue of fact that he was the only person to make an inventive contribution to the Patents-in-Suit. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### 3.   The District Court Properly Considered the Testimony of the Named Inventors

Bassali also attacks the district court's holding that "[t]o the extent that the evidence establishes that the conception occurred on February 20, 1990, the evidence also establishes that the conception was a joint or collaborative effort." Dkt. 341, at 19 (A107); Pl. Br., at 30. Bassali argues that (1) "three of four inventors admitted that they did not contribute to the invention" and (2) "Mr. Zeinstra's ability to contribute to the invention was itself a disputed issue of fact." Pl. Br., at 30. On the first point, Bassali deliberately ignores that Duckworth and Van Lente affirmatively testified that Zeinstra contributed to the invention. Duckworth Dep. Tr. 83:13-84:25 (A2741); Van Lente Dep. Tr. 25:6-15 (A2531).

---

[13] In any event, Duckworth testified that he believed Zeinstra wrote first. Duckworth Dep. Tr. 83:13-84:1 (A2741).

On the second point, Bassali is trying to generate a fact dispute where there is none and fails to cite to any authority. As discussed *supra*, the only alleged support that Bassali has (as set forth elsewhere in his brief) is testimony from Zeinstra that—twenty years after-the-fact—he cannot recall the details of the patented invention. Pl. Br., at 24–25. This cannot possibly provide clear and convincing evidence that Zeinstra was unable to contribute to the invention at the time of conception, especially in light of supporting testimony from other witnesses. *See Hess,* 106 F.3d at 980 (presumption that named inventors on issued patent are correct); *Linear Tech.*, 379 F.3d at 1318 (requiring the court to make only "reasonable inferences" in favor of the non-moving party).

The next paragraph of Bassali's Brief—the last full paragraph on page 30—contains nothing but a series of conclusory statements without citations to any evidence. The paragraph concludes—unsupported by any evidence—as follows: "Mr. Bassali was the ***only*** person with the expertise to design the circuit that was found to be patentable." (emphasis in original). The evidence, however, simply does not support this conclusion. First, as discussed above, Duckworth and Van Lente testified that Zeinstra contributed to the invention. Duckworth Dep. Tr. 83:13-84:25 (A2741); Van Lente Dep. Tr. 25:6-15 (A2531). Second, the testimony that Bassali relies upon to support the notion that Zeinstra lacked the requisite skills—based on his memory of the invention twenty years after conception—is

unpersuasive. *See* Pl. Br., at 24–25. Finally, and perhaps most critically, Bassali has not provided any independent evidence of the level of skill required to conceive the Patents-in-Suit. Rather, he merely asserts that he was the only one with sufficient expertise to conceive the invention.[14] That alone, however, is insufficient to raise a fact question in his favor, *Linear Tech.*, 379 F.3d at 1327, especially considering that the PTO found that it was not the circuit design details of UGDO that were patentable but rather its novel function. Decision on Appeal, at 14 (A3938).

### 4. The District Court Did Not Weigh Evidence or Draw Inferences in Defendants' Favor

Bassali next makes the noteworthy statement, without citation, that "the district court made a factual determination in Defendants' favor that Mr. Zeinstra contributed to the patentable features of the invention, and drew inferences in Defendants' favor that these contributions were material." Pl. Br., at 30. Bassali's statement makes clear that he has lost sight of which party bears the burden of proof. In order to grant Defendant JCI's motion, the district court did not need to affirmatively conclude that "Mr. Zeinstra contributed to the patentable features of the invention" and that "these contributions were material." *See Celotex*, 477 U.S. at 322-23. Rather, the district court needed only find that Bassali failed to identify sufficient evidence to raise a genuine issue of fact concerning whether Zeinstra *did*

---

[14] Incidentally, there is no requirement that an inventor be an "expert" in the field of his alleged invention. *See Tavory v. NTP, Inc.*, 297 Fed. App'x. 976, 981 (Fed. Cir. 2008); *also Morse v. Porter*, 155 U.S.P.Q. 280, 283 (Bd. Pat. Inter. 1965).

*not* so contribute. *Id.* Because Bassali failed to present any such evidence, the district court properly granted summary judgment for JCI.

### 5. "Missing Evidence" Does Not Advance Plaintiff's Case

Lastly, Bassali criticizes the district court for not drawing an adverse inference against JCI from the alleged "missing evidence." *See* Pl. Br., at 31. Yet, it is Bassali who deserves criticism for repeatedly making these incendiary allegations while at the same time neglecting his burden of proof and the proper legal procedures for seeking an adverse inference. *See Stocker*, 705 F.3d at 235 and discussion *supra* at Argument Sections i.B.5-6.

For all of these reasons, Bassali has failed to show that the district court erred in its analysis of the evidence. Indeed, it is not the district court but Bassali who misunderstands the summary judgment standard. Contrary to his assertions, JCI *was* entitled to summary judgment because Bassali failed to raise a genuine issue of material fact in support of his sole inventorship claim. *Celotex*, 477 U.S. at 322-23. Accordingly, JCI respectfully requests that the judgment of the district court be AFFIRMED.

## II. The District Court Did Not Err in Granting Summary Judgment for Defendants on Plaintiff's Unjust Enrichment Claim

On Bassali's claim for unjust enrichment, the district court granted summary judgment for the JCI Defendants for two reasons—the claim was (1) preempted by federal patent law and (2) barred by New York's six-year statute of limitations.

Bassali has failed to show that the district court erred in reaching either of these conclusions.

### A. The District Court Did Not Err in Finding Plaintiff's Unjust Enrichment Claim Preempted

Bassali's position on preemption has two parts. He first argues that—even if claims for unjust enrichment by omitted *co-inventors* are preempted—claims by omitted *sole inventors* are not. Bassali then argues that unjust enrichment claims by co-inventors are not actually preempted to the extent they are based on "false exclusivity." He is wrong in both respects.

### 1. Legal Framework—Federal Preemption

The key to the preemption doctrine is "whether the operation of state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974)). Any such state law will be held preempted. *See id.* There are three forms of federal preemption—explicit preemption, conflict preemption, and field preemption. *Univ. of Colorado Found. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. 2003) (*Cyanamid VI*) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990)). The most pertinent to the present case is field preemption, which occurs when a federal scheme occupies a given field, thus displacing any state law in that field. *Id.*

"Field preemption describes exclusive regulation of a legal subject by federal law." *Univ. of Colorado Found. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999) (*Cyanamid IV*). "[T]he field of federal patent law preempts any state law that purports to define rights based on inventorship." *Cyanamid IV*, 196 F.3d at 1372. Whether a given state law is preempted by federal law is "fundamentally . . . a question of congressional intent . . . ." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990). Congress' intent may be implicitly contained in a statute's structure and purpose. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).

With field preemption, "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). "Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.*

Finally, "[a]n unjust enrichment claim is preempted by federal patent law when it conflicts with the accomplishment and execution of the full purposes and objectives of Congress." *Tavory v. NTP, Inc.*, 297 Fed. App'x 976, 982 (Fed. App'x 2008) (quoting *Ultra-Precision Mfg. v. Ford Motor Co.*, 411 F.3d 1369,

1377 (Fed. Cir. 2005)). It is also preempted when "it . . . enters a field of regulation which the patent laws have reserved to Congress." *See Bonita Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 167 (1989).

> **2.** **Plaintiff's Claim to Be the Sole Inventor of the Patents-in-Suit Does Not Save His Unjust Enrichment Claim from Preemption**

In an effort to overcome the Federal Circuit case law holding that unjust enrichment claims by omitted co-inventors are preempted under 35 USC § 262, Bassali argues that his unjust enrichment claim is not preempted insofar as it arises from his claim to be the *sole* inventor of the Patents-in-Suit. Pl. Br, at 34. As an initial matter, this is noteworthy because it tethers Bassali's unjust enrichment claim to his sole inventorship claim. Accepting as true that unjust enrichment claims by co-inventors are preempted, Bassali's unjust enrichment claim cannot survive without his sole inventorship claim. Yet, as argued above, Bassali has failed to raise a genuine issue of material fact in favor of his sole inventorship claim. Accordingly, to the extent his unjust enrichment claim arises from his sole inventorship claim, it cannot survive summary judgment. In any event, as set forth below, Bassali's sole inventorship allegations *do not* save his unjust enrichment claim from federal preemption.

Indeed, it is well-established that "[s]tates may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal patent law." *Bonita Boats*, 489 U.S. 141 at 156. Yet, this is exactly what Bassali is attempting to obtain through his unjust enrichment claim— he wishes to be compensated as if it was he and not Defendants who obtained the Patents-in-Suit. Bassali claims to be the sole inventor of the Patents-in-Suit, and yet has never filed a patent application for the inventions claimed therein. Accordingly, from his perspective, the invention is an "intellectual creation[] which would otherwise remain unprotected as a matter of federal patent law." *Id.* One cannot obtain patent protection without filing a patent application (or suing for correction of inventorship), and Bassali cannot retroactively cure his failure to do so—or his more than six-year delay in seeking to correct inventorship—through a state law claim for unjust enrichment.[15]

Congress, through the Patent Act, has enumerated remedies available to persons allegedly omitted from patent applications. For example, such persons may file their own competing applications and institute interference proceedings before

---

[15] *See also Tavory v. NTP, Inc.*, 297 Fed. App'x. 976, 984 (Fed. Cir. 2008) ("Tavory's entitlement here to a portion of any benefits from the enforcement of the patents-in-suit in patent infringement actions stems solely from his entitlement to being joined as a co-owner. Here, since Tavory's status as a co-owner depends entirely on whether he was a co-inventor, the dispositive issue is Tavory's alleged co-inventorship, which is governed exclusively by federal patent law. *See Cyanamid IV*, 196 F.3d at 1372. Therefore, we affirm the district court's dismissal of Tavory's unjust enrichment claim as preempted by federal patent law.")

the USPTO. 35 USC § 135. They may also file actions to correct inventorship under 35 USC § 256. Notably, however, Congress has not provided that omitted inventors may collect damages from the previous patent owner for the time period during which they were omitted from the patent. *See* 35 USC §§ 1–390. Congress having already occupied this field, states may not supplement the Patent Act to add such a remedy. *See Bonita Boats*, 489 U.S. at 167 ("The patent statute's careful balance between public right and private monopoly to promote certain creative activity is a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the State to supplement it.'"). Accordingly, Bassali cannot circumvent federal patent law with a state law claim for unjust enrichment.

Moreover, this result is not contradicted by—indeed is supported by— Bassali's own cited case law. Bassali primarily relies upon *University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 342 F.3d 1298 (Fed. Cir. 2003) ("*Cyanamid VI*") but ignores significant aspects of that decision that undermine his position. In *Cyanamid VI*, the Federal Circuit considered whether a particular unjust enrichment claim was preempted by federal patent law and ultimately determined that it was not. However, in stating its basis for that result, the Federal Circuit stated as follows:

> The right involved here and compensated for under a theory of unjust enrichment, however, is not "patent-like" at all. As we explained in *Cyanamid IV*, "the unjust enrichment claim springs not from an attempt to enforce intellectual property rights, but instead from Cyanamid's alleged wrongful use of the Doctors' research results." … [T]he Doctors' claim of unjust enrichment is a legal claim to remedy the breach of a contract implied in law for disclosure of their confidential manuscript in exchange for a promise not to disseminate the idea without the Doctors' consent. The fact that Cyanamid improperly secured the '634 patent and used this patent to obtain incremental profits only pertains to restitution for the unjust enrichment claim.

*Id.* at 1306 (internal citations omitted). Thus, this Court in *Cyanamid VI* acknowledged the general rule that unjust enrichment claims seeking "patent-like" remedies are barred. It allowed the claim to survive only because it was "a legal claim to remedy the breach of a contract implied in law for disclosure of [the Doctors'] confidential manuscript." *Id.* Accordingly, the holding of *Cyanamid VI* does not help Bassali, who did not identify any "breach of a contract implied in law" for which he seeks compensation. Rather, he seeks only to reclaim the benefit of a patent from which he was allegedly omitted, but for which he himself never applied. That is precisely a "patent-like" remedy and is preempted by federal patent law. *Bonita Boats*, 489 U.S. 141 at 156.

Further, it bears noting that in his Second Amended Complaint, Bassali did not allege—and has not contended otherwise in his brief—that JCI omitted him from the Patents-in-Suit with a culpable state of mind:

43

Mr. Bassali does not know whether he was not named as an inventor
or co-inventor on the Patents in Suit deliberately, in knowing
contravention of the duty of candor owed to the Patent Office, or
whether this occurred through error, without deceptive intent, i.e.,
inadvertently due to failure of Prince's patent counsel to appreciate
certain facts or through a lack of knowledge of certain legal
principles.

Dkt. 17, ¶ 14 (A646). Rather, his claim for unjust enrichment is based on the *sole*
fact that he was omitted from the patent application. *See* Dkt. 17, ¶¶ 18-20 (A647).
As explained above, the Patent Act—including 35 USC § 256—conspicuously
lacks any provision that an allegedly omitted inventor has a claim for damages
against the patent holder. *See* 35 USC §§ 1-390.

Finally, as for the district court's statement that "in order for the unjust
enrichment claim not to be subject to preemption, Bassali must be able to prove his
claim for unjust enrichment 'without proving improper inventorship[.]'" Dkt. 388,
at 10 (A35). Bassali argues that this was an error of law demanding reversal of the
district court's order. He has, however, presented the statement out of context. In
context, the district court was merely applying the holding of *Cyanamid VI*. *See*
Dkt. 338, at 9-10 (A34–35).

In *Cyanamid VI*, the Federal Circuit found—as discussed above—that an
unjust enrichment claim was not preempted by federal law where it arose out of
"the breach of a contract implied in law." 342 F.3d at 1306. In that case, the
Federal Circuit noted that the inventorship issue "only pertain[ed] to restitution for

44

the unjust enrichment claim." *Id.* In other words, the unjust enrichment claim existed irrespective of patent law—it arose out of the misuse of a confidential manuscript, which was a "breach of a contract implied in law." *Id.* Thus, in *Cyanamid VI*, the plaintiff did not need to plead or prove improper inventorship in order to prevail on his unjust enrichment claim—patent law was only relevant when it came to calculating the proper measure of restitution for the defendant's breach of implied contract. *Id.*

By contrast, Bassali has not identified any "breach of a contract implied in law." His unjust enrichment claim is based *solely* on the alleged fact that he was omitted from a patent application. *See* Second Am. Compl. (A643–649). Thus, the district court properly found the claim preempted pursuant to *Cyanamid VI. See* Dkt. 338, at 9-10 (A34–35). Accordingly, Bassali's out-of-context quotation of the district court's opinion fails to demonstrate any error of law demanding reinstatement of his unjust enrichment claim.

### 3. Insofar As Plaintiff's Claim for Unjust Enrichment Arises from His Co-Inventorship Allegations, It is Preempted

Bassali next argues that the claim is not preempted because JCI has been "unjustly enriched by being able to assert false exclusivity." Pl. Br., at 37. As an initial matter, this position fails for all of the reasons stated immediately above. Moreover, in the case of an omitted co-inventor, there is an additional reason that an unjust enrichment claim is preempted by federal patent law—35 USC § 262,

which permits any joint owner of a patent to exploit the patent without the consent of, and without accounting to, the other owners. As stated in multiple decisions of this Court, and as acknowledged by Bassali (Pl. Br., at 33–34), § 262 bars claims for unjust enrichment by omitted co-inventors. *Ultra-Precision Mfg., Ltd. v. Ford Motor Co.*, 411 F.3d 1369, 1382 (Fed. Cir. 2005); *Tavory v. NTP, Inc.*, 297 Fed. Appx. 976, 982 (Fed. Cir. 2008).

Despite § 262, Bassali pursues his "false exclusivity" theory in purported reliance on *Shum v. Intel*, 499 F.3d 1272 (Fed. Cir. 2007). However, the issue of preemption was not addressed in *Shum*, where the Federal Circuit merely reversed the district court's dismissal on the pleadings of a claim for unjust enrichment on the basis that the district court had misapplied California law. *Id.* at 1279-80. In any event, the cited decision does not help Bassali because its facts are so distinguishable.

To illustrate, *Shum* arose out of a failed business relationship between plaintiff Shum and defendant Verdiell. *Id.* at 1274. In his complaint, Shum alleged various wrongful and inequitable conduct by Verdiell. *Id.* at 1275. For example, while the parties' business relationship was ongoing, Verdiell allegedly incorporated a competing company without informing Shum, i*d.*, and then knowingly filed multiple patent applications on behalf of the competing company directed to technology developed by Shum. *Id.* Thus, unlike Bassali,

Shum relied on allegations of wrongdoing separate and distinct from the mere failure to list him as an inventor. As such *Shum* does not help Bassali avoid preemption, since he has not identified any state law basis for the alleged restitution he seeks.

Indeed, it is not *Shum*, but this Court's holding in *Tavory*, 297 Fed. App'x. at 982–83, that is most instructive here. In *Tavory*, where an allegedly omitted co-inventor did not plead any independent state law basis for his unjust enrichment claim, the Federal Circuit affirmed dismissal under Fed. R. Civ. P. 12(b)(6) on the basis that unjust enrichment was preempted by § 262. *Id.* The Federal Circuit stated, "Tavory cannot sidestep § 262 through a state law unjust enrichment claim; such a claim is preempted because it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* In reaching this conclusion, the Federal Circuit even addressed whether claims seeking a share of licensing revenue and litigation proceeds—both of which are sought by Bassali in the present case—are preempted. *Id.* at 984. The Court, holding in the affirmative, stated as follows:

> Tavory's . . . argument, at least with regard to the RIM settlement, fails because the RIM settlement agreement was a license, and as already noted, licensing by co-inventors is covered by § 262. *See Cyanamid IV*, 196 F.3d at 1373. But even if it had been an award of damages by the court, and to the extent Tavory also seeks compensation relating to other litigation awards NTP may have received, Tavory's claim to a portion of such awards is also entirely dependent on whether he is a co-owner. A patent infringement suit

must join all of the co-owners for standing purposes. *Ethicon*, 135 F.3d at 1467. Thus, Tavory's entitlement here to a portion of any benefits from the enforcement of the patents-in-suit in patent infringement actions stems solely from his entitlement to being joined as a co-owner. Here, since Tavory's status as a co-owner depends entirely on whether he was a co-inventor, the dispositive issue is Tavory's alleged co-inventorship, which is governed exclusively by federal patent law. *See Cyanamid IV*, 196 F.3d at 1372. Therefore, we affirm the district court's dismissal of Tavory's unjust enrichment claim as preempted by federal patent law.

*Id*. Accordingly, notwithstanding Bassali's speculation concerning the licensing revenue and litigation proceeds JCI might not have realized had Bassali been named as an inventor on the Patents-in-Suit (Pl. Br., at 38–39), *Tavory* holds that claims for such proceeds by omitted co-inventors are preempted by federal law. *Id.* Bassali characterizes his claim as one for "restitution" (Pl. Br., at 39), but having failed to articulate any state law basis for the requested relief, the claim is preempted by federal patent law.

### B.     The District Court Did Not Err in Finding that Plaintiff's Unjust Enrichment Claim Was Barred by the Statute of Limitations

Finally, Bassali argues that the district court erred in finding that his unjust enrichment claim was barred by the statute of limitations. There are three ways in which Bassali's argument fails. First, he has ignored the New York case law cited by the district court and has not identified any binding precedent compelling a different result. Second, the "continuing accrual" approach advocated by Bassali is untenable as a matter of policy because it would undermine the very purpose of a

statute of limitations. Finally, Bassali did not properly brief the statute of limitations issue before the district court and thus cannot complain about the result at this late stage in the litigation.

### 1. Legal Framework—Statute of Limitations

The district court previously determined that Bassali's unjust enrichment claim is governed by New York law, Dkt. 159, at 19 (A22), which provides a six-year statute of limitations for unjust enrichment. *Lawyers' Fund for Client Prot. v. Gateway State Bank*, 239 A.D.2d 826, 827 (N.Y. App. Div. 1997). Under New York law, the statute of limitations for unjust enrichment runs "upon the occurrence of the wrongful act giving rise to a duty of restitution." *Congregation Yetev Lev D'Satmar, Inc. v. 26 Adar N.B. Corp.*, 192 A.D.2d 501, 503 (N.Y. App. Div. 1993).

### 2. Plaintiff Has Not Shown that the District Court Committed Any Error under New York Law

First and most importantly, Bassali has failed to show that the district court's application of New York law to the facts of this case was incorrect. The district court found that Bassali's unjust enrichment claim accrued more than six years prior to the filing of suit—when JCI allegedly "used Plaintiff's work product"— and was thus barred. Dkt. 159, at 21 (A24). In support of this decision, the district court cited *Sirico v. F.G.G. Productions., Inc.*, 71 A.D.3d 429, 434–35 (N.Y. App. Div. 2010). In that case, a New York appellate court found that an unjust

enrichment claim concerning the sharing of proceeds from a copyrighted musical work accrued at the time the work was created, not at the time the defendants allegedly withheld royalties owed to the plaintiffs. *Id.* Based on *Sirico*, the district court correctly ascertained that a New York court would *not* find that an unjust enrichment claim such as Bassali's re-accrues with each alleged failure to distribute proceeds. Yet, Bassali has never acknowledged *Sirico* or cited any binding New York authority demanding a different result.

Bassali's argues that his claim for unjust enrichment re-accrues each time JCI allegedly retain some monetary benefit traceable to the Patents-in-Suit. Pl. Br., at 40–41. In support, Bassali relies primarily upon *St. John's University v. Bolton*, 757 F. Supp. 2d 144, 185 (E.D.N.Y. 2010), which is neither binding upon this Court nor a dispositive pronouncement of New York law. *See Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 165 (Fed. Cir. 1985).

In *Bolton*, a university sued its former professor for, *inter alia*, breach of contract and unjust enrichment[16] over the professor's alleged failure to assign certain patents to, and share revenues with, the university. Pursuant to the professor's alleged contract with the university, he had an obligation to share with the university any revenues flowing from the patents-in-suit. The court found that the university's

---

[16] The court allowed the unjust enrichment claim to proceed as an alternative to the contract claim, in the event the asserted contract was deemed unenforceable. *Id.* at 184–85.

unjust enrichment claim was barred by the statute of limitations insofar as "it relate[d] to royalties received more than six years before the commencement of the action."[17] *Id.* Thus, *Bolton*, at best, stands for the limited proposition that a breach of contract claim—or an unjust enrichment claim pled in the alternative thereto—re-accrues with each new act of breach. It does not address the critical question here, which is whether an unjust enrichment claim arising only from alleged patent inventorship re-accrues each time the patent holder retains some benefit from the patent. Accordingly, *Bolton* does not lend any support to Bassali's position.

### 3. As a Matter of Policy, Unjust Enrichment Claims Arising from Patent Inventorship—to the Extent They Are Not Preempted—Cannot Continually Accrue

Bassali's position is also untenable as a matter of policy because it would allow unjust enrichment claims to persist almost indefinitely, defeating the purpose of a statute of limitations. *Westminister Properties, Ltd. v. Kass*, 624 N.Y.S.2d 738, 740 (N.Y. Sup. 1995). ("[T]he purpose of all Statutes of Limitations is to put disputes to rest and require suits to be brought while the evidence is fresh and available.") (internal brackets and quotations omitted). As such, it is highly unlikely that the New York Court of Appeals would endorse Bassali's position. *See Litton*, 755 F.2d at 165.

---

[17] The court also found that "[t]he unjust enrichment claims based on patent ownership would be time-barred because all of the Liquisolid Patents issued more than six years before the commencement of the action." *Id.*

As cited by Bassali, "Under New York law, an unjust enrichment claim accrues upon occurrence of the wrongful act giving rise to the duty of restitution." *Bolton*, 757 F. Supp. 2d at 185. In Bassali's view, each time JCI retained some benefit from the Patents-in-Suit, it was a "wrongful act giving rise to the duty of restitution." *Id.* Such an outcome, however, cannot possibly be correct for claims based on the inventorship of patents which occurred decades earlier. *See Westminister*, 624 N.Y.S.2d at 740.

Under the scheme advanced by Bassali, he could have waited until the year of the Patents-in-Suit's expiration—or even later—to assert his claims. To avoid such an absurd result, and to avoid incentivizing potential plaintiffs to take a wait-and-see approach, it is likely that claims for unjust enrichment arising from inventorship—to the extent they are not preempted by federal law—would be deemed by the New York Court of Appeals to accrue on a date certain, such as the date the patent issues. *See Litton*, 755 F.2d at 165. To hold otherwise would be akin to allowing a personal injury victim to wait decades for the complications from an injury to culminate in some catastrophic medical emergency before filing suit, or allowing an investor who believes she has been wrongly deprived of title to a stock certificate to file suit after waiting seventeen years for it to appreciate. These of course would violate fundamental principles of tort law, as would the approach advocated by Bassali. For this reason, it was not error for the district

court to find that Bassali's claim for unjust enrichment was barred by New York's six-year statute of limitations.

### 4.    Plaintiff Has Waived the Statute of Limitations Issue Through Inadequate Briefing Before the District Court

Lastly, Bassali complains that the district court reached the wrong result with respect to the statute of limitations, but Bassali's summary judgment briefing did not enable the district court to reach any other result. In his Response to JCI's Motion for Summary Judgment, Plaintiff argued that his unjust enrichment claim re-accrued each time JCI retained some benefit from the Patents-in-Suit. Dkt. 105, at 26 (A1470–1471). Bassali's Second Amended Complaint, however—which was the operative complaint for purposes of the summary judgment motion and Order that is the subject of this appeal (*See* Dkt. 159, at 5, n.9 (A8))—did not recite any facts stating a claim for unjust enrichment arising out of any such benefits retained during the statutory period. *See* Dkt. 17 (A643–49). Moreover, his summary judgment opposition brief did not identify any evidence that JCI had *actually* retained any such benefit.[18] *See* Dkt. 105, at 26- 27 (A1470-1471). Bassali stated only as follows: "JCI doesn't argue that it failed to profit from the Homelink products during the applicable time period. There is no dispute that the Homelink

---

[18] About ten months later, in early February 2010, the parties each filed supplemental summary judgment briefs concerning the issue of laches and inventorship. Bassali's supplemental brief *still* did not cite to any evidence that JCI had retained any benefits traceable to the Patents-in-Suit during the statutory period. Dkt. 146 (A2378-2386).

products have been profitable for JCI." Dkt. 105, at 26 (A1470). This was insufficient to raise a genuine issue of fact in Bassali's favor because it cites to no evidence and fundamentally misunderstands the right provided by a patent.[19]

It is a basic principle of patent law that patents do not provide the right to practice the claimed technology; they provide the right to exclude others from practicing it. 35 USC § 154(a)(1); *see also TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009). In any event, Bassali has not cited any evidence that the Homelink products allegedly sold by JCI during the relevant time period actually practiced the Patents-in-Suit, or—more fundamentally—that JCI even sold any Homelink products during the relevant period. Even if both of those facts were true, however, profits from practicing a patent—without additional facts—are not attributable to the patent. *See id.* Rather, in order to survive a motion for summary judgment, Bassali would have to show that JCI wrongfully retained benefits stemming from the right to exclude—such as licensing royalties. *See id.* Yet, Bassali's Second Amended Complaint (Dkt. 17

---

[19] Bassali's argument also ignores that—as he acknowledged in his original and first amended complaint (Dkt. 1, ¶ 15 (A635); Dkt. 8, ¶ 15 (A640))—JCI has, at a minimum, a shop right in the Patents-in-Suit. *See McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1580–84 (Fed. Cir. 1993). Indeed, even if Bassali was the sole inventor of the Patents-in-Suit, it is indisputable that the patented technology was developed at the expense of JCI, in contemplation that JCI would sell products practicing the technology. *See id.* Thus, JCI could not possibly be "unjustly enriched" by exploiting the Patents-in-Suit.

(A643-649)) failed to allege—and his Summary Judgment Brief (Dkt. 105 A1445–1471)) failed to cite any evidence—that JCI did so.

Bassali has subsequently tried to cure these deficiencies. First, about seven months after the court dismissed his claim for unjust enrichment, on January 5, 2011, Bassali filed a Motion for Leave to File a Third Amended Complaint. Dkt. 180 (AA2660-2661). In his proposed Third Amended Complaint, he attempted to re-assert his already-dismissed unjust enrichment claim,[20] and added factual allegations in support of the re-asserted claim.[21] Dkt. 181-1, ¶¶ 82-84 (A2702). In response, JCI pointed out that the unjust enrichment claim had already been dismissed with prejudice (Dkt. 211, at 30 (A3157)), and the Court denied leave to re-assert the unjust enrichment claim (but allowed Bassali to amend to accuse additional defendants and add fraud claims). Dkt. 234, at 5 (A56). Bassali, however, has not argued that the Court's decision in this regard was error. As such, Bassali's Third Amended Complaint—including its additional factual

---

[20] Bassali, in acknowledgement of the fact that the claim had already been dismissed, stated in a footnote, "This Count is presented for ensuring that Plaintiff preserves his right to appeal the Court's May 12, 2010 order …." Dkt. 181-1, at 19 31, n. 1 (A2704). Bassali did not cite any legal authority or explain how the purported Count helps preserve his right to appeal.

[21] Bassali affirmatively alleged that JCI's HomeLink product practiced the Patents-in-Suit and that JCI has sold "approximately 50 million HomeLink units". Dkt. 181-1, ¶¶ 82-83 (A2702). Bassali further alleged that JCI had asserted the Patents-in-Suit in litigation and received damages. *Id.* ¶ 84. However, Bassali did not identify when any of these events allegedly occurred.

allegations—cannot and does not save his unjust enrichment claim.[22] Indeed, by the time Bassali filed the Third Amended Complaint, his unjust enrichment count had already been dismissed with prejudice. Dkt. 159, at 22 ("Plaintiff's claim for unjust enrichment is dismissed with prejudice as time-barred.") (A4–25).

Several months after seeking leave to amend, Bassali filed a Motion for Reconsideration where, for the first time, he attempted to present evidence that his unjust enrichment claim was not barred by the statute of limitations because JCI had retained benefits stemming from the Patents-in-Suit during the statutory period. Dkt. 235-1, at 11-12 (A3203-3204). That, however, could not cure his failure to do so in his original summary judgment brief.[23] Moreover, the district court reviewed Bassali's evidence and determined that all of it was either (1) already available to Bassali at the time he opposed JCI's Motion for Summary Judgment, (2) cumulative of evidence that was available at that time, or (3) did not require a different outcome. Dkt. 338, at 23 (A48). Notably, Bassali has not

---

[22] In its opinion denying Bassali's motion for reconsideration, the Court examined the allegations of the Third Amended Complaint and determined that "the Third Amended Complaint's attempt to revive the unjust enrichment claim was futile." Dkt. 338, at 16 (A41). Bassali has not directly challenged or otherwise addressed this determination in his appeal brief.

[23] *See, e.g.*, *Turcar, LLC v. I.R.S.*, 451 Fed. App'x. 509, 516 (6th Cir. 2011) ("A district court's refusal to consider evidence produced for the first time on a motion for reconsideration will be reversed only if the refusal was an abuse of discretion."); *Phonometrics, Inc. v. Westin Hotel Co.*, 319 F.3d 1328, 1333 (Fed. Cir. 2003) ("We, as a court of review, generally do not consider evidence that has not been considered by the district court.").

addressed this aspect of the district court's holding on appeal, or even alleged that it was error. Instead, Bassali continues to cite the same evidence that he cited in his motion for reconsideration (Dkt. 241) (A3193-3213) without any explanation as to why its presentation before this Court is timely. *See, e.g.*, *Turcar,* 451 Fed. App'x. at 516; *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 123 (6th Cir. 1982); *Phonometrics*, 319 F.3d at 1333.

Bassali cannot complain that the district court failed to rule in his favor when his own complaint and summary judgment briefing were insufficient to allow it to do so. Bassali's subsequent efforts to revive the claim were futile, because none of them—including the present appeal—could alter the fact that the district court properly granted summary judgment on the record that was before it. For this and all of the foregoing reasons, Bassali has failed to show that the district court erred in finding his unjust enrichment claim barred by the statute of limitations.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the reasons set forth herein, JCI respectfully requests that the judgment of the district court be AFFIRMED in its entirety.

Dated: November 21, 2013

Respectfully submitted,

By: /s/ J. Michael Huget
J. Michael Huget (P39150)
Deborah J. Swedlow (P67844)
Charles W. Duncan, Jr. (P75288)
Honigman Miller Schwartz and Cohn LLP
130 S. First St., Fourth Floor
Ann Arbor, MI 48104-1386
(734) 418-4254
mhuget@honigman.com
bswedlow@honigman.com
cduncan@honigman.com

*Attorneys for Defendants-Appellees*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on November 21, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

John M. DiMatteo
Robert G. Kofsky
Steven H. Reisberg
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, NY 10019

*Counsel for Appellant*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Melissa A. Dockery
Melissa A. Dockery
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA 23219

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements,
### And Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        this brief contains <u>13,759</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.


Dated: November 21, 2013                    By: <u>/s/ J. Michael Huget       </u>
                                            J. Michael Huget (P39150)